UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JOHNNY RAY DUNCAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:17 CV 187 ACL |
| | ) |
| LONE STAR INDUSTRIES, INC. | ) |
| D/B/A BUZZI UNICEM USA, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Johnny Ray Duncan filed this negligence action against Defendant Lone Star Industries, Inc., d/b/a Buzzi Unicem USA ("Buzzi"), arising from injuries Duncan allegedly sustained from exposure to chemicals at Buzzi's Cape Girardeau, Missouri facility. Presently pending before the Court are the following motions filed by Buzzi: Motion for Partial Summary Judgment (Doc. 39), Motion to Exclude the Opinions and Testimony of Dr. Helen Reynolds (Doc. 41), and Motion to Exclude the Opinions and Testimony of Rodric Breland (Doc. 43).

**I.   Facts**

The facts relevant to Buzzi's Motion for Summary Judgment are not disputed by the parties. As taken from Buzzi's Statement of Uncontroverted Material Facts (Doc. 40-1) and Duncan's Responses to such (Doc. 45), the facts are as follows:

On June 27, 2017, Duncan was employed as a truck driver for Sumter Transport Company ("Sumter"). On the night of June 27, 2017, Duncan arrived at Buzzi's plant in Cape Girardeau, Missouri with a load of waste that is used to fuel the cement kilns at Buzzi's facility. After Duncan arrived, he checked in and then went to sleep in the cab of his truck for the

evening.  The following morning, Duncan moved his truck and trailer into position to be unloaded by Buzzi's employees.  Duncan then proceeded to lie down to sleep in the sleeper portion of his truck during the unloading process.  Buzzi's employees began offloading the waste.  During this process, material contained in the truck's tanker spilled out of a latch located at the top of the vessel onto the floor of the unloading facility.

Duncan was subsequently awoken by Buzzi's employees sometime between 9:00 and 9:30 a.m. and told a spill occurred, and to follow them to the driver's lounge.  Duncan testified in his deposition that after he awoke, he was experiencing a headache, sore throat, chest burning, and difficulty breathing.  Duncan proceeded to the lounge without the need of physical assistance and waited in the lounge with the other drivers for the rest of the day.  While waiting in the lounge, Duncan communicated with his employer, other truck drivers, and employees of Buzzi.  A Mine Safety and Health Administration ("MSHA") official also happened to be on site when the spill occurred.  Because Duncan was precluded from moving his truck, he remained at the facility all day and interacted with various personnel of Buzzi.  He was transported by an employee of Buzzi to a motel after 10:30 p.m., approximately thirteen hours after he was notified to leave the truck.  Duncan did not notify any representative of his employer, anyone affiliated with Buzzi, the MSHA investigator, or anyone else located at the facility that he was experiencing any health effects from the incident at any time that day, evening, or the following day.

Duncan's first record of any complaints occurred when he visited an urgent care facility in Cape Girardeau the following evening, almost 36 hours after the incident.  An x-ray was taken of Duncan's chest and no evidence of any lung condition was found.  All subsequent x-rays and CT scans of Duncan's chest failed to indicate any obstruction or other lung conditions.  Over the

course of the next two days, Duncan claimed to medical personnel that he was experiencing a sore throat, cough, and shortness of breath.

On July 3, 2017, Duncan sought legal representation with his current attorneys. Duncan filed the instant action on October 24, 2017, in which he alleges injuries including reactive airways dysfunction syndrome ("RADS") and chemical pneumonitis caused by fumes at Buzzi's facility.

On July 27, 2017, Duncan filed a claim for compensation for a work-related injury against his employer, Sumter, with the Texas Division of Worker's Compensation ("TDWC"), entitled *Johnny Duncan v. Granite State Insurance Company*, Docket Number TY-17334944-01-CC-WA43 ("TDWC Claim"). Duncan alleged in his TDWC Claim that his exposure to chemical fumes at Buzzi's facility caused his lung and breathing injuries including RADS, restrictive lung disease, obstructive lung disease, dysphagia, chemical pneumonitis, nasal congestion, dyspnea, light-headedness, fatigue, and orthopnea.

On October 10, 2018, a TDWC administrative law judge ("ALJ") held the contested case hearing. On February 25, 2019, after all the evidence was presented and supplementation of the record was made, the record was closed and the ALJ issued a Decision and Order. The ALJ found "there was a lack of persuasive medical evidence that the compensable injury caused the disputed conditions." The ALJ further determined that the compensable injury, for the purposes of determining maximum medical improvement and impairment rating, was limited to "a sore throat" injury. The ALJ concluded that Duncan reached maximum medical improvement on August 24, 2017, and that his impairment rating was 0%. Duncan did not appeal the ALJ's Decision and Order within the time allowed for such an appeal.

## II.     Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine issue of material fact is not the "mere existence of some alleged factual dispute between the parties." *State Auto. Ins. Co. v. Lawrence,* 358 F.3d 982, 985 (8th Cir. 2004). "Instead, the dispute must be outcome determinative under prevailing law." *Mosley v. City of Northwoods,* 415 F.3d 908, 910-11 (8th Cir. 2005) (internal quotations omitted). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in his favor to allow a jury to return a verdict for him. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the nonmoving party – as long as those facts are not 'so blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the nonmoving party and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir. 2000). The court is required, however, to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

## III. Discussion

Buzzi argues that the TDWC's decision, which is now final, should be given preclusive effect to Duncan's claims before this Court. Buzzi contends that, consistent with the TDWC's Decision and Order, Duncan should be precluded from asserting the following under principles of collateral estoppel: 1) the claimed exposure at Buzzi's facility caused RADS, restrictive lung disease, obstructive lung disease, dysphagia, chemical pneumonitis, nasal congestion, dyspnea, light-headedness, fatigue, or orthopnea; 2) the exposure was a cause of any worsening, enhancement, or acceleration of the previously-named conditions; 3) any medical condition, other than a sore throat that resolved by August 24, 2017, was caused by the exposure at Buzzi's facility; and 4) Duncan was permanently impaired as a result of the alleged exposure at Buzzi's facility.

In his Response in Opposition to Buzzi's Motion, Duncan first argues that summary judgment is inappropriate in negligence cases. He next contends that application of collateral estoppel is inappropriate in this case for the following reasons: the standard of proof in showing causation in a TDWC hearing is different than that of Missouri law; Buzzi's assertion that Texas

5

law should apply to its collateral estoppel argument goes against its argument to apply Missouri law; and the application of collateral estoppel, even if proper, is inappropriate in this case based on principles of equity.

As an initial matter, the Court rejects Duncan's argument that summary judgment is not appropriate in this case due to its nature as a negligence action. The only issue presented in Buzzi's Motion is whether the legal doctrine of collateral estoppel applies. The facts surrounding Duncan's negligence claims are not at issue in the Motion. Resolution of this legal issue is appropriate for summary judgment and, as will be discussed below, the Eighth Circuit Court of Appeals has upheld the grant of summary judgment under similar circumstances.

**A.     Choice of Law**

The Court applies Missouri choice of law rules to determine which state's law should govern, because federal courts sitting in diversity apply the forum state's choice of law principles. *See American Guarantee and Liab. Ins. Co. v. United States Fid. & Guar. Co.*, 668 F.3d 991, 996 (8th Cir. 2012). "Missouri follows the 'most significant relationship' test from the Restatement (Second) of Conflicts of Laws § 145 (1971) for resolving choice-of-law questions in tort actions." *Id.* (cited case omitted). "Under Section 145, the factors to be considered are: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered." *Id.* "In cases in which the injury and the conduct causing the injury occur in the same state, the Restatement principles are easy to apply." *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir. 1994) (citing Restatement § 146 cmt. d, "noting that, subject only to rare exceptions, the local law of the state where the conduct and the injury occurred will be applied.").

In this case, both parties contend that Missouri law should apply to Duncan's personal injury claims. The Court agrees. The chemical spill that allegedly caused Duncan's injuries occurred at Buzzi's Cape Girardeau, Missouri facility. Duncan claims that Buzzi was negligent in failing to use proper procedures to prevent the spill and in failing to have proper procedures in place to make sure persons are protected in the event of a spill. As such, Missouri is the state in which both the injury and the conduct causing the injury occurred. Although Duncan is a Texas resident, this action does not present any unique facts supporting the application of law other than the local law. Thus, Missouri law applies to Duncan's negligence claims.

The Court must next determine the law to be applied to the collateral estoppel analysis. Buzzi argues that United States Supreme Court precedent requires that Texas law be applied. Duncan contends that the Court should apply Missouri law to the collateral estoppel analysis because Missouri law applies to Duncan's tort claims. He argues that Missouri law differs from Texas law in that it requires that the issue in the prior adjudication be *identical* with the issue presented in the instant action.[1]

The United States Supreme Court, in *University of Tennessee v. Elliott,* 478 U.S. 788, 799 (1996), considered whether federal courts should give preclusive effect to the fact-finding of state administrative tribunals. The Court considered the policy underlying the Full Faith and Credit Clause in acting as a "nationally unifying force," and preventing courts of a second forum

---

[1] Under Missouri law, collateral estoppel precludes the re-litigation of an issue when: (1) the issue previously decided is "identical to the issue presented in the present action"; (2) the "prior adjudication resulted in a judgment on the merits"; (3) the "party against whom collateral estoppel is asserted was a party or was in privity with a party to the prior adjudication"; and (4) the party against whom collateral estoppel is asserted had "a full and fair opportunity to litigate the issue in the prior suit." *Royal Ins. Co. of Am. v. Kirksville Coll. of Osteopathic Med., Inc.*, 304 F.3d 804, 807 (8th Cir. 2002) (quoting *James v. Paul*, 49 S.W.3d 678, 682 (Mo. 2001)).

7

from reaching conflicting results. *Id.* The Court held that "[w]hen a state agency acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's courts." *Id.*

In this case, Buzzi argues that the decision of the TDWC should be given preclusive effect. The TDWC was acting in a judicial capacity when it rendered its decision. For example, both parties were represented by counsel, Duncan testified under oath and was examined by counsel, and the ALJ admitted exhibits from both parties including investigative reports, and Duncan's medical records. (Doc. 40-1 at p. 5; Doc. 45 at p. 6.) Pursuant to *Elliott*, this Court must give the TDWC decision the "same preclusive effect" to which it would be entitled in Texas. Consequently, this Court must apply Texas law to Buzzi's collateral estoppel argument.[2] *See also Estus v. Perry*, No. 04-3209-CV, 2005 WL 1936316, at *3 (W.D. Mo. Aug. 8, 2005).

**B.     Collateral Estoppel Analysis**

Under Texas law, collateral estoppel "bars re[-]litigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same cause of action." *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984). Final judgments by state workers' compensation commissions are indeed capable of generating issue preclusion in subsequent litigation. *See Jones v. Illinois Employers Ins. of Wausau*, 136 S.W.3d 728, 738 (Tex. Ct. App. 2004) (workers' compensation awards are "entitled to the same faith and credit as a judgment of a court"). A party asserting collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action, (2) those facts were essential to the judgment in the first action,

---
[2] As will be discussed below, the result would not differ if Missouri law were applied. The factors required for the application of collateral estoppel in Missouri are set out in fn. 1.

and (3) the parties were cast as adversaries in the first action. *John G. and Marie Stella Kenedy Mem. Found. v. Dewhurst,* 90 S.W.3d 268, 288 (Tex. 2002). "To invoke collateral estoppel on the basis of a prior administrative order, the party must show that the administrative agency 'was acting in a judicial capacity and resolve[d] disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.'" *SWEPI, L.P. v. Camden Res., Inc.*, 139 S.W.3d 332, 338 (Tex. Ct. App. 2004) (citation omitted).

Duncan only disputes the first element. He argues that the facts were not fully and fairly litigated for the following reasons: (1) the issues are not the same because the standard of proof in showing causation in a TDWC hearing is different than that of Missouri negligence law; (2) the TDWC proceedings did not provide him with a fair opportunity to litigate his claim; and (3) collateral estoppel is inappropriate based on principles of equity.

**1.     Causation Standards**

An injury "arises out of" employment for the purpose of proving causation in TDWC claims if the employee's work or working conditions are shown to be a "producing cause" of injury. *See Transcon. Ins. Co. v. Crump,* 330 S.W.3d 211, 221 & n. 5 (Tex. 2010). In *Crump,* the Texas Supreme Court addressed the "producing cause" standard. *Id*. at 221-23. It held that producing cause is "defined as a substantial factor in bringing about an injury or death, and without which the injury or death would not have occurred." *Id.* at 227. The Court further found that "producing cause" necessarily includes a "but for" or "cause in fact" component. *Id.* at 226-27.

In a negligence claim, Missouri law requires a plaintiff to establish a causal connection between the defendant's conduct and the plaintiff's resulting injury." *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 991 (8th Cir. 1998) (citing *Kraus v. Celotex Corp.*, 925 F. Supp. 646, 651

9

(E.D. Mo. 1996)). To establish the necessary causal connection, the plaintiff must prove both causation in fact ("but for" causation) and proximate causation. *Paull v. Shop N Save Warehouse Foods, Inc.*, 890 S.W.2d 401, 403 (Mo. Ct. App. 1995)). In considering whether a plaintiff established causation in fact, courts apply the "but for" test. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 862 (Mo. 1993). Under this test, the plaintiff must prove that the injury would not have happened but for defendant's conduct. *Id.* The Missouri Supreme Court has stressed that "but for causation" is an absolute minimum because it establishes causation in fact. *Id.*

Thus, both TDWC law and Missouri negligence law require the plaintiff to show "but for" causation.

Duncan argues that there is an additional requirement in TDWC law of an "explanation of the mechanism of injury." (Doc. 46 at p. 4, quoting the decision of the ALJ, Doc. 46-1 at p. 3.) He contends that the testimony of a doctor to a "reasonable degree of medical probability" of causation "is not enough ONLY in the context of a Texas workers' compensation case." (Doc. 46 at p. 4.)

In the Decision and Order at issue in this case, the ALJ set forth the "producing cause" causation standard, citing *Crump*. (Doc. 46-1 at p. 3.) The ALJ then stated:

> There must be an explanation of how a condition that is being disputed was caused by the mechanism of injury. An opinion simply stating that a medical opinion is based upon a reasonable degree of medical probability is not sufficient to support a determination on extent of injury. An explanation of how the mechanism of injury caused the disputed condition is required. Additionally, exposure to toxic chemicals through inhalation, and the resultant effect on the body, are matters beyond common experience, and medical evidence should be submitted which establishes the connection as a matter of reasonable medical probability as opposed to a possibility, speculation, or guess. [citation omitted]

*Id.* at 3-4.

10

Duncan's argument is unavailing. The TDWC Appeals Panel has explained that a claimant "must show the mechanism of injury is a producing cause of the claimed injury, i.e., a substantial factor in bringing about an injury, and without which the injury would not have occurred." Appeal No. 171082, 2017WL3207398, at *1 (July 12, 2017, TDWC Appeals Panel) (citing *Crump*, 330 S.W.3d 211 (Tex. 2010)). It is apparent, therefore, that an explanation of the "mechanism of injury" is not a requirement separate from causation but encompassed in the causation analysis. The "mechanism of injury" in this case was Duncan's "exposure to toxic chemicals through inhalation." (Doc. 46-1 at 3-4.) These chemicals were identified as hydrogen sulfide. *Id.* at 3. Thus, Duncan was required to show that the "mechanism of injury" (his exposure to hydrogen sulfide through inhalation on June 28, 2017) was a producing cause of his claimed injuries.

Although Duncan claims that the TDWC requires more than the testimony of a doctor to a "reasonable degree of medical probability" to establish causation, this is also refuted by the language of the decision. The ALJ stated that Duncan was required to submit medical evidence "which establishes the connection *as a matter of reasonable medical probability*…" (Doc. 46-1 at p. 4) (emphasis added). In other words, Duncan had to show not only that he was diagnosed with the disputed conditions; but also that those conditions were caused by the exposure as a matter of reasonable medical probability. Missouri negligence law requires the same. The Eighth Circuit has examined the standard:

> Many Missouri cases state that a medical expert's opinions must be expressed to a **reasonable degree of medical certainty**. When the issue is **causation**, this requires the expert to have a "reasonable certainty in his mind" that "the result in question most probably came from the cause assigned." "[O]pinions of experts that a certain occurrence or condition might or could produce a certain result ... does not alone constitute substantial evidence that such occurrence or condition did cause it." *Kinealy v. Southwestern Bell Tel. Co.*, 368 S.W.2d 400, 404-05

(Mo. 1963).

*Bone v. Ames Taping Tool Systems, Inc.*, 179 F.3d 1080, 1082 fn. 2 (8th Cir. 1999) (emphasis in original).

Duncan suggests that the chemical to which he was exposed was unknown to him and to the TDWC at the time of the hearing. He argues that he was therefore unable to present the required expert medical testimony. The record refutes this claim. The Decision and Order states that Buzzi's investigators concluded that "hydrogen sulfide is the likely agent leading to [their employee's] acute health effects during the incident." (Doc. 46-1 at p. 3.) In addition, the ALJ stated that Duncan contended "that he was also exposed to the hydrogen sulfide for several hours when he was asleep in his truck." *Id.* There was no dispute during the TDWC proceeding regarding the chemical to which Duncan was exposed. Duncan's claim was denied not because he was unable to identify the chemical, but because he failed to establish that his exposure to "toxic chemicals through inhalation," whether it was hydrogen sulfide, benzene, or another chemical, caused his claimed injuries other than a sore throat.

In sum, the issue of causation decided in the TDWC Claim was identical to the issue presented in the instant negligence action. For this reason, the TDWC decision satisfies not only Texas collateral estoppel law but Missouri law as well. *See Royal Ins. Co. of Am.*, 304 F.3d at 807 (collateral estoppel precludes the re-litigation of an issue when the issue previously decided is "identical to the issue presented in the present action").

**2.     Fairness of Prior Proceedings**

Duncan next argues that applying collateral estoppel in this instance would be "patently unfair" due to the nature of the TDWC proceedings. Duncan cites the following factors in support of this claim: a contested case hearing is limited to two hours; there is a requirement to

12

exchange exhibits only fifteen minutes prior to the hearing; and the transcripts of some of the doctors' depositions were not available to the ALJ.

In addressing the issue of fairness when considering the application of collateral estoppel, the Missouri Supreme Court in *Oates v. Safeco Ins. Co. of America*, quoted a decision from the Third Circuit:

> A party who has had one fair and full opportunity to prove a claim and has failed in that effort, should not be permitted to go to trial on the merits of that claim a second time. Both orderliness and reasonable time saving in judicial administration require that this be so unless some overriding consideration of fairness to a litigant dictates a different result in the circumstances of a particular case.

583 S.W.2d 713, 720 (Mo. 1979) (quoting *Bruszewski v. United States*, 181 F.2d 419, 421 (3d 1950).

The TDWC's Practices and Procedures Relating to Contested Case Hearings ("TDWC Practices") reveal that, although two hours is the time typically allocated for hearings, the ALJ "may allow additional time when necessary and appropriate." (Doc. 46-5 at p. 3.) Duncan does not represent that he requested additional time and was denied, or even that he in fact required additional time to present his evidence.

With regard to exhibits, the TDWC Practices does provide that the parties should exchange marked exhibits "at least 15 minutes" before the hearing. *Id.* at p. 4. As Buzzi points out, however, Texas law requires that the parties exchange documentary evidence "no later than 15 days after the benefit review conference," which occurs long before a contested case hearing. 28 Tex. Admin. Code § 142.13(c).

Finally, although Duncan argues that the deposition transcripts of two of his physicians were not available to the ALJ, he does not indicate why the depositions could not have been scheduled sooner. Further, he does not allege that the TDWC was responsible for the delay or

13

the unavailability of the evidence, nor does he claim that he requested and was denied an extension on this basis. In fact, the decision indicates that the ALJ requested further development on October 18, 2018, after the Contested Case Hearing, to determine Duncan's maximum medical improvement and impairment rating. (Doc. 46-1 at p. 2.) Duncan was examined by Robbie Rampy, M.D., on February 4, 2019. *Id.* Dr. Rampy's records were sent to both parties for their review, objections, and further arguments. *Id.* This post-hearing correspondence was added to the record. *Id.* The record closed on February 25, 2019. *Id.*

The Court finds that Duncan had a full and fair opportunity to litigate the issue in the prior action. Duncan was represented by counsel at the hearing and was examined by counsel. Exhibits were admitted into evidence by both parties, including the following: investigative reports regarding the spill, Duncan's medical records, pulmonary function tests, x-rays and CT scans, TDWC Designated Doctor Medical Evaluations of Duncan, and peer review medical reports by Dr. Rafid Fadul, M.D., and Dr. Patricia B. Rosen, MD, MPH. (Doc. 40-1 at ¶ 27.) The ALJ ordered additional medical evidence after the hearing.

TDWC Practices allow claimants to conduct discovery, including subpoenaing witnesses and issuing written discovery. (Doc. 46-5 at p. 2.) To the extent Duncan did not have all the evidence he desired when the ALJ issued her decision, this was not due to any actions on the part of the TDWC, or restrictions in procedure. Nearly 15 months passed from the filing of Duncan's TDWC claim to the date of the contested case hearing, and the record was open another four months before the ALJ closed the record and entered her Decision and Order on February 25, 2019. Duncan has not explained how the TDWC procedures prevented him from having a full and fair opportunity to present the deposition testimony of Dr. Bismar which was taken on September 28, 2018; and Dr. Sinha which was taken on February 19, 2019.

14

Duncan has failed to raise an overriding fairness concern that would require this Court to permit him to re-litigate the issue of causation.

**3.      Equitable Arguments**

Duncan's final argument is that, even if the application of collateral estoppel is proper, it is "inappropriate in this setting based on equitable arguments."  (Doc. 46 at p. 6.)

In line with Duncan's argument, the Eighth Circuit has noted that "Missouri case law is clear that collateral estoppel should not be applied where to do so would be inequitable." *Hudson Specialty Ins. Co. v. Brash Tygr, LLC*, 769 F.3d 586, 593 (8th Cir. 2014) (citing *James v. Paul*, 49 S.W.3d 678, 683 (Mo. 2001)).

Duncan argues that he "focused [his] efforts of recovery against Defendant Buzzi, largely because the workers' compensation carrier has a statutory right of subrogation in order to recover its benefits," and his "resources were better spent against Buzzi, as any money that was given by the carrier would have to be paid back along with a holiday of benefits." *Id.* at 7.  This suggestion is incongruent with the record before the TDWC.  Duncan fully participated in the TDWC procedures.  Filing claims in the TDWC and this Court put Duncan in the best position to recover for the harm he alleged as a consequence of the chemical spill.  Duncan's investment of resources to support his claim would benefit him in both forums.  Duncan had incentive to fully litigate his workers' compensation claim because the outcomes in either forum could not be predicted.

Duncan further argues that the actual chemicals to which he was exposed were not known when he initially saw his doctors, which prevented him from being able to present that evidence in support of the "mechanism of injury" during the Contested Case Hearing. (Doc. 46 at p. 7.) As previously noted, the record belies this contention as to hydrogen sulfide.  The ALJ was

15

aware that the investigation revealed the presence of hydrogen sulfide (Doc. 46-1 at p. 3) and an exhibit containing OSHA Information pertaining to hydrogen sulfide was admitted during the contested case hearing (Doc. 40-7 at p. 2). While it does not appear that benzene had been identified as one of the toxic chemicals that Duncan inhaled, the ALJ did not question whether Duncan had been exposed to toxic chemicals on June 28, 2017. Identifying specific chemicals was not where Duncan fell short in his proof. Rather, he lacked the necessary "persuasive medical evidence that [his] compensable injury caused" all of the disputed conditions. (Doc 46-1 at p. 4.)

The Court is unpersuaded by Duncan's argument that the application of collateral estoppel would be inequitable. To the contrary, the Eighth Circuit has upheld the application of collateral estoppel in similar circumstances. *See Brown v. Dow Chemical Co.*, 875 F.2d 197, 199 (8th Cir. 1989) (affirming district court's grant of summary judgment by collateral estoppel in products liability suit when Arkansas Workers' Compensation Commission denied plaintiff's claim for benefits on the basis he failed to prove his injuries were caused by the chemicals with which he worked on the job). *See also Rutter v. Rivera*, 74 Fed.Appx. 182, 187-88 (3d Cir. 2003) (workers' compensation judge's decision that Rutter was not disabled as a result of work-related accident, collaterally estopped her from litigating her claim for lost wages in negligence action ).

Collateral estoppel has "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co, Inc. v. Shore*, 439 U.S. 322, 326 (1979). As stated above, the issue raised in this suit is identical to the issue litigated in the TDWC action. The TDWC's decision was based solely on Duncan's inability to prove that

exposure to chemical fumes at Buzzi's Cape Girardeau facility caused any of his alleged injuries other than a sore throat. Moreover, the issue was fully and fairly litigated in the previous action. As such, the Court finds that the application of collateral estopppel in this case is both legally proper and equitable.

Thus, Buzzi's Motion for Partial Summary Judgment will be granted. The Court finds that Duncan is barred by collateral estoppel from asserting the following principles: (1) The claimed exposure at Buzzi's facility caused reactive airway disease, restrictive lung disease, obstructive lung disease, dysphpagia, chemical pneumonitis, nasal congestion, dyspnea, light-headedness, fatigue, orthopnea, or was a cause of any worsening, enhancement or acceleration of these conditions; (2) Any medical condition, other than a "sore throat" that resolved by August 24, 2017, was caused by the alleged exposure at Buzzi's facility; and (3) Duncan was permanently impaired as a result of the alleged exposure at Buzzi's facility.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. 39) is **granted.** A separate Judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that a telephone conference to discuss the status of the pending *Daubert* Motions (Docs. 41, 43) is set for **Wednesday, August 28, 2019 at 4:30 p.m**.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of August, 2019.